## 52474. BRYANT v. THE STATE.

PANNELL, Presiding Judge.

Ed Bryant was indicted in the Superior Court of Whitfield County, Georgia, and charged in two counts with the offense of theft by knowingly receiving stolen property. Count 1 charged him with receiving 55 metal fence posts from one Terry Quinn. This count was nolle prossed. This appeal is the result of his conviction on the charge contained in Count 2, which charged him with receiving a metal gate from the same party. The evidence disclosed that the defendant owned a farm and operated a grocery store; that his home was on the farm and that he raised cattle on the farm, and sometimes did a little trading of different items, buying and selling. Being a farmer, he was in constant need of fence posts. The evidence further disclosed that one Quinn, 18 years old, and another boy 13 years old, stole fence posts by cutting the wire and pulling up the posts, which they placed in Quinn's truck and covered with a tarpaulin. Quinn testified he took the posts by the grocery store operated by the defendant, and told defendant he had some fence posts for sale; the defendant came out of the store and Quinn pulled the tarpaulin off the fence posts and exhibited them to the defendant who asked him where he had gotten them. Quinn replied "from the side of the road." The defendant agreed to pay 50 cents per post, instructed the witness to deliver them to a certain place on defendant's property close to his house, and told the witness he

would take all he could get. The witness collected payment the next day and subsequently brought several more loads of posts, delivering them to the defendant's home, these deliveries being made in the middle of the night, and were collected for at the store of the defendant the next day. At one time, the defendant asked witness if he could get a 16 foot metal gate, as defendant had use for one at a shed he was building, and told the witness he would pay $15 for the gate. The witness and his friend then stole a gate of the required dimensions and delivered it in the middle of the night to the defendant's home, and the next day collected $10 for the gate, the reduction in price being occasioned by the condition of the gate. Defendant was never present during the deliveries, except that he was in the house apparently asleep.

The defendant's testimony was substantially the same as Quinn's, except in the following particulars. The defendant testified that when he asked Quinn, on the first encounter, where he got the fence posts, Quinn replied he was helping a farmer tear down a fence. The defendant also contradicted Quinn as to the posts on the first occasion being covered by a tarpaulin. Defendant also testified that Quinn first brought up the idea of the gate by telling defendant he could get one for him. Quinn was quite definite in his testimony that defendant first brought up the subject matter of the gate. Both Quinn and his companion testified about stealing the posts and gate and delivering them, the gate being the last item. The companion had nothing to do with negotiations between Quinn and the defendant. The defendant made a motion for directed verdict which was denied. The jury found him guilty and sentence followed. Defendant then made a motion for the judgment notwithstanding the verdict which was overruled. He appealed to this court. *Held:*

1. Knowledge that goods were stolen may generally be inferred from circumstances which would excite suspicions of an ordinarily prudent man. *Birdsong v. State,* 120 Ga. 850 (48 SE 329); *Williams v. State,* 16 Ga. App. 697, 698 (6) (85 SE 973). The evidence in the present case as to the totality of the transaction, though contradicted by the defendant as to those areas which might indicate guilty knowledge or create suspicious

circumstances sufficient to cause an ordinarily reasonable man to believe the metal fence gate was stolen, is yet sufficient in our opinion to show defendant bought the metal gate under such circumstances as would authorize the jury to find that he had guilty knowledge that the fence gate was stolen property. We, therefore, conclude the evidence was sufficient to authorize the verdict and there was no error in refusing to direct a verdict of "not guilty," nor in refusing to enter a judgment notwithstanding the verdict, should we assume the latter is a procedure applicable to criminal cases.

2. Upon a former trial of the same offense, the jury was unable to reach a verdict and the trial judge declared a mistrial. Appellant assigns error on this appeal, upon the refusal of the trial judge to direct a verdict at that trial. Assuming without deciding that such an enumeration of error is subject to review, it appears from the transcript of that trial sent up with the record in the case, that the evidence was substantially the same, and in the prior trial, would have authorized a verdict of guilty. There was no error, therefore, in refusing to direct a verdict in the former trial.

3. While the witness, Quinn, was testifying, he was asked why he took the fence posts to the defendant. His answer was that he had heard, he didn't know from whom, that defendant might buy them. This evidence was not objectionable as placing the defendant's character in issue, and there was no error in admitting it.

4. The prosecuting attorney, during his argument to the jury, made the following remark, referring to defendant's attorney's argument: He "was absolutely right, he [defendant] is not being charged with receiving the fence posts today, we brought that up to show you what he was thinking, to show you his bent of mind when he got the gate, and I think it's all one ball of wax, it's all tied in together, it all could be considered one transaction." Attorney for the defendant objected on the grounds that this was improper argument. We do not think so. There was no error in overruling the objection.

5. During argument to the jury, the attorney for the defendant made the following remarks: "Now, what does that tell me? It tells me that at one time, they thought they

could prove the case, but apparently, now, because somebody's shifting, they can't, so it has been nolle prossed." This was a reference to the first count of the indictment. Upon objection by the prosecuting attorney, the trial judge sustained the objection and instructed the jury that they should draw no inferences one way or the other from the fact that the indictment contained a Count 1, or that it had been nolle prossed. If the ruling made be error, we fail to see in what manner the defendant has been harmed thereby.

6. No harmful error being shown, the judgment is affirmed.

*Judgment affirmed. Marshall and McMurray, JJ., concur.*

Argued July 7, 1976 — Decided July 12, 1976.

*E. Crawford McDonald,* for appellant.
*Samuel J. Brantley, District Attorney,* for appellee.